## McINTYRE *v.* WARREN.

December, 1866.

Doubtful, or even probable testimony, is not sufficient to open a long settled account, in the absence of any proof of fraud or undue influence.
Upon this principle, the testimony of a witness that errors in the account were admitted by the defendant, on an occasion many years before the trial and many years after the occurrence of the errors in question, is not sufficient, if it does not appear that any memorandum of the admissions was ever made by the witness, and his recollection is not corroborated, and is not complete in regard to material points.
The whole burden of proof is on the party seeking to open such an account.

John McIntyre filed a bill in the late court of chancery against Halsey Rogers and Ephraim Newland, to open the accounts settled between the parties, as partners, at various times between December 20, 1830, and April 27, 1839. Pending the suit, all the parties died, and it was continued by Lucy McIntyre, executrix and plaintiff, against William H. Warren, the administrator of Rogers, and John B. Newland and others, executors of Newland.

The bill alleged that in 1828, the original plaintiff and defendants entered into the lumber business in the county of of Saratoga, sharing equally in the losses and profits; that the keeping of the accounts was intrusted solely to Rogers, and they were kept by him in his own name; that, from time to time,

Rogers exhibited statements to which the plaintiff was induced to assent in writing, and that the plaintiff has recently discovered that all of the said statements are erroneous; that the first of such settlements took place on December 20, 1830, when the plaintiff exhibited two papers, marked No. 1 A and No. 1 B, which were signed by the plaintiff and Rogers, on the representation of Rogers that the same were correct; that the statement No. 1 A, erroneously charged to the plaintiff, as if received by him, the note of Southwick, Canon &˙Warren, at nine months, on sale of timber . . . . . . . . . . . . $4,770 00

. And Roswell Butler, draft on nine months, from 2nd of December, 1829, due September 2, 1830 . . . 4,000 00

And the note. of Southwick, Canon & Warren on account of Butler, due 22nd of October, 1830, at nine months . . . . . . . . . . . . . . . . 865 02

And the note of Southwick, Canon & Warren on account of Butler, due 22nd of October, 1830 . . . 500 00

The plaintiff charged that said sums were, in fact, received by Rogers, and not by him.

The complaint further alleged that the statement No. 1 B was erroneous, and that the plaintiff was therein credited with the following items:

"Account of money due from Bailes & Roberts . $3,023 00
Judgment ·against Peck . . . . . . . . . . 1,550 95 "

which items the plaintiff alleges were afterward collected and received by said Rogers, and that the plaintiff was entitled to one-third part thereof.

The plaintiff alleged that, upon the statement marked No. 1 B. was and is a memorandum in the handwriting of Rogers, in these words: "Due John McIntyre, for advances on white oak, sent to Canada in the years 1829 and 1830, four thousand four hundred and fifty-one dollars and thirty cents," which statement the plaintiff admits to be correct, and avers that the same has never been paid to him.

The plaintiff further alleged that, on March 20, 1831, another settlement was required by him, which he alleges to be erroneous, and that he is therein charged with the amount of a note of Seaman & Barker, for one hundred and thirty-six dollars

and sixty-six cents, which he charges was never received by him, but was received by Rogers.

That on March 9, 1832, another statement was made out by said Rogers, and signed by the said plaintiff, wherein the plaintiff is erroneously charged with the following items:

"G. and E. Curtis' note, December 21, 1830 . . . $1,372 24
Interest on said note to May 13, 1831 . . . . . 41 62
Errors in his credit of one thousand dollars, June
   22nd, 1829, of one thousand dollars to Roswell
   Butler, which was included in the notes, and de-
   ducted therefrom . . . . . . . . . . . 1,000 00
Interest 1 year 10 months 21 days, to May 13, 1831 . 132 40 "

The plaintiff further averred that this (Curtis') note was procured to be discounted by Rogers, who applied the proceeds to his own use, and the note was taken in payment of the Peck judgment charged to plaintiff in No. 1 B; and that the one thousand dollars credited June 22, 1829, was paid by him to Butler, and was properly credited to him.

The complaint further alleged that on March 9, 1832, Rogers presented and the plaintiff signed another statement marked No. 3 B, wherein the amount in the hands of Southwick, Canon & Warren, to the credit of said Rogers, is stated at three thousand one hundred and sixteen dollars and eight cents, while the same, in fact, amounted to eleven thousand three hundred and fifty-nine dollars and seventy-five cents, and that the same had been paid to Rogers by being credited in an account between him and Southwick, Canon & Warren; and that the Reuben Whallar account, mentioned in said statement as three thousand five hundred and twenty-eight dollars and fifty-six cents, amounted in reality to four thousand eight hundred and sixty-four dollars and sixty cents.

Other general errors were alleged, and it was there stated that after the last settlement, and on April 27, 1839, Rogers represented that there had been an error against him of one thousand dollars in settling said accounts, and without examination, the plaintiff gave Rogers his note for one thousand dollars, payable in three months from date, which was afterward paid by him by the transfer to Rogers of the note of H. R. Marshall, which was fully paid by Marshall to Rogers.

That afterward, by like representations, the said Rogers obtained from him another note for one thousand five hundred dollars, which was paid by him to Rogers, and is now in the hands of Rogers' representative.

The plaintiff alleged that all the foregoing representations on the part of Rogers were fraudulent, and made with intent to defraud the plaintiff, and that he never discovered said errors or frauds, until within six years before the commencement of the action, and that in 1843, he applied to Rogers to correct the accounts and pay him the balance due him. That the accounts were partially examined, and it was conceded that there were mistakes and omissions on both sides. That in April, 1846, the plaintiff and Rogers again met in New York, and the parties signed the paper as to the statute of limitations given below and in the complaint. That in 1846, the matters were verbally submitted to General Clark, as a mutual friend, to examine and decide the same. That the parties met before Clark, and agreed upon several items, and Clark made a memorandum of the same, which items, some in favor of the plaintiff, amounting to seven thousand one hundred and nineteen dollars and twenty-two cents, and some in favor of Rogers, amounting to two thousand six hundred and eighty-nine dollars and twenty-nine cents, were set forth in the complaint; that other claims were presented which Rogers refused to allow, and that he also refused to allow Clark further to examine the matter, and withdrew the same from his examination.

The answer, which was interposed under the Code of Procedure, after the abolition of the court of chancery, contained a general denial, and the plea of the statute of limitations.

On the trial, the plaintiff produced the accounts, and the evidence referred to in the opinion, and also put in evidence the following paper.

"In the city of New York, 24th April, 1846. It is agreed between John S. McIntyre, formerly of Fort Edward, but now of Brooklyn, and of the firm of McIntyre & Smith, and Halsey Rogers, that the statute of limitations shall not be pleaded by either of the parties in payment of any legal claim they have. (Signed) Halsey Rogers, John R. McIntyre."

Upon this evidence, the referee dismissed the complaint on

defendant's motion, he being of opinion that the agreement related to transactions between McIntyre & Smith on the one part, and Halsey Rogers on the other.

*The supreme court,* on appeal, held that the stipulation was mutual and binding, and was a full and perfect answer to the defense of the statute of limitations; they were of opinion, however, that although there was evidence of money belonging to the plaintiff in the defendant's hands which would have been sufficient to sustain a recovery, if the action were one to recover money due simply from the defendant to the plaintiff, and if defendant should not overcome the presumption raised by the evidence; yet, in an action to impeach an account once stated and settled, no such presumption arises, and the whole burden of proof is upon the impeaching party, and the proof must be clear and positive to entitle him to relief; they accordingly affirmed the judgment of dismissal.

*E. F. Bullard,* for plaintiff, appellant;—Cited 3 *Abb. Dig.* 732, cases cited; 40 *Barb.* 119; Sears v. Shafer, 6 *N. Y.* (2 *Seld.*) 268; 3 *Vt.* 212; 2 *R. S.* 3 ed. 399, § 52; 25 *N. Y.* 361, 541; 5 *Randolph,* 666; *Cow. & Hill's Notes,* 421, 520.

*U. G. Paris,* for defendant, respondent;—Cited Thorne v. Lockwood, 11 *N. Y.* (1 *Kern.*) 170; Wilde v. Jenkins, 4 *Paige,* 481; Mooers v. White, 6 *Johns. Ch.* 360, 370, 371, 372; 1 *Abb. Dig.* p. 19, &c., cases cited; Law v. Merrill, 6 *Wend.* 268; reversing 9 *Cow.* 65; Garrison v. Akin, 2 *Barb.* 25; Williams v. Thorp, 8 *Cow.* 201.

BY THE COURT.—HUNT, J.—Unlike most of the cases brought before us for examination, the whole merits of the case are under review. It is governed by section 460 of the Code, which enacts that, "in all cases of appeal to the court of appeals, in actions which were originally commenced in the late court of chancery of this State, the court of appeals shall review the cause upon the facts and the law, without any statement or specification of facts found, or any exception taken at the trial of any or either of them, and it shall be, and is hereby declared to be, the duty of the court of appeals, in any and all

such cases, to review the whole matter, upon the evidence as well as the law."

[The learned judge here recapitulated the bill of complaint as above.]

The trial before the referee was brief, and consisted of few items of evidence, which will be hereinafter noticed. It is to be observed, however, here, that the charge of fraud was not established, indeed, it was not attempted to be sustained. The claim of the plaintiff, upon the evidence, is simply that these accounts, so long since settled and adjusted by the parties, shall be opened and readjusted. To entitle a party to this relief, error or fraud must be clearly and certainly established, and it must appear, upon a review of the accounts, that there are errors still existing, to the injury of the plaintiff, and the onus, in the full sense of the expression, rests upon the party making the claim. Lockwood v. Thorne, 11 N. Y. 170; Wilde v. Jenkins, 4 Paige, 481. In the latter case, the court say, "the modes of keeping accounts are so various, that it is difficult for third persons to understand them, in many cases, with all the light which the evidence can throw upon the transactions. The practice of opening accounts, therefore, which the parties who could best understand them, have themselves adjusted, is not to be encouraged. And it should never be done upon a mere allegation of errors, supported by doubtful, or even probable testimony only, especially where the parties to the settlement stood upon terms of perfect equality, so that there could be no pretense of fraud or imposition practiced by one person upon another. In the language of a distinguished judge, 'the whole labor of proof lies upon the party objecting to the the account, and errors which he does not plainly establish cannot be supposed to exist.'" In Chappedelaine v. Dechenaux, 4 Cranch, 306, Chief Justice MARSHALL said, "no practice could be more dangerous than that of opening accounts which the parties themselves had adjusted, on suggestions supported by doubtful, or only probable testimony."

I have given a statement of so many of the errors, alleged by the plaintiff to exist, not because they have been proved, or testimony of such nature as has been given, as to create serious question as to their accuracy, but as an illustration of the ease

with which charges may be made, and of the manner in which difficulties are supposed to exist, and as to which the party apparently becomes satisfied that he is himself mistaken, and of which, it might still be difficult for the other party to establish the accuracy. I will refer to some of these charges. The first charge in order in the complaint, is that certain items in exhibit No. 1 A, are erroneously charged to the plaintiff. These items consist of a note to Southwick, Canon & Warren, at nine months, given on sale of timber, for four thousand seven hundred and seventy dollars; a draft of Roswell Butler, at nine months, from December 2, 1829, and due September 2, 1830, for four thousand dollars; another note of Southwick, Canon & Warren, dated January 5, 1830, at nine months, for eight hundred and sixty-five dollars and two cents; and another note of the same parties, due October 22, 1830, for five hundred dollars. The heading of this account shows that it was a settlement made October 22, 1830, and two of the notes, alleged to be fraudulent or erroneous, it will be perceived, either matured or bore date on that very day ; and the note for four thousand dollars matured within a few weeks thereafter, to wit: on December 2 following. It is scarcely within the limits of possibility, that a man of ordinary intelligence, would erroneously sign and acknowledge the accuracy of an account in which he was conspicuously charged with ten thousand one hundred and thirty-five dollars, alleged to have been received by him, or to have matured, almost at the very time of such acknowledgment. These items are large in amount, and each occupy three lines of an account, before the sum is carried out in dollars and cents, and occur at the close of an account. They are not hidden or concealed by the manner of making the account, but are quite conspicuous, so far as the printed form would indicate. Accordingly, when the trial occurred, no attempt was made to sustain the charge by evidence. After a lapse of thirty odd years, it would, however, have been very difficult for the defendant to have rebutted any supposed admission, or other apparent proof of error. The charge, however, is urged in the bill with the same gravity and seriousness as the other items complained of, and of which proof was given.

The next subject of complaint in order arises upon exhibit No. 1 B, in which it is charged that plaintiff is credited with the items, " the amount of money due from Bailes & Roberts, $3,024," and " the amount of judgment against Peck, $1,950.95," and which item it is alleged has since been collected by said Rogers. No evidence was given of any error or fraud in relation to these items. Indeed, an examination of the exhibit shows the fallacy of the charge of error in respect to it. It is not the statement of an account between Rogers and McIntyre, in which the latter is charged with these amounts, but it is simply a statement of the transaction itself. It is headed, " Dr., pine timber and spars, bought per account of John McIntyre," and not Dr. John McIntyre or Cr. Halsey Rogers. In confirmation of this view, on the other side of the page, the same items, " Due from Bailey and Roberts, $3,023," and " Peck judgment, $1,550.95 " are entered as " assets due the company." If they were still due the company it could not have been intended that the items should be credited or charged to any one. The collections thereon would form the subject of a future account, in relation to which we have no information.

It is also alleged that in exhibit No. 3 A, the plaintiff was erroneously charged with G. & E. Curtis' note December 21, 1830, for $1,372," and with " error in his credit of $1,000, June 22, 1829, to Roswell Butler, which was included in the note and deducted therefrom, $1,000." This account appears to have been made up on May 13, 1831, and it seems incredible that the plaintiff should not then have known whether, within six months previous, he had received the (Curtis) note of one thousand three hundred and seventy-two dollars, and it seems equally incredible that he should have admitted an error of one thousand dollars, and refunded the amount as occurring within two years previously, if not satisfied that honesty and accuracy required such admissions. On the trial, no attempt was made to sustain the one thousand dollar item alleged to be erroneous, but proof was given tending to show that Rogers had admitted before General Clark that a note of a similar amount, though differing ten days in its date, made by the Curtises, was erroneously charged to the plaintiff. It did appear, however, that in

exhibit No. 2 A, the plaintiff was credited with " G. & E. Curtis' note at 1 year cash, $1,372.24," under date of November 30, 1830. He, therefore, stood as charged and credited in the account with the same items, thus balancing its effect. The Peck judgment, which is shown to be also for the Curtis debt, is credited to McIntyre, December 20, 1830, in No. 1 B. So of the allgation of errors in exhibit No. 3 B, that there was in the hands of Southwick & Canon eleven thousand three hundred and fifty-nine dolllars instead of three thousand one hundred and sixteen dollars, as stated therein, and that Whallen's account was larger than therein mentioned, the statement is unimportant. The exhibit was not a statement of accounts between the parties, but of assets on hand, headed " Pine Timber Company," and we are to look to the subsequent settlements of the parties to ascertain the fact of error or accuracy.

I will not pursue further the subject of the charges of the complaint, except as they may be established by the proof at the trial, and will now examine the evidence given before the referee. The evidence of Mr. Cramer showed that in August, 1828, he received a deed executed by Rogers and wife, and McIntyre and wife, of certain property in the city of New York, in which two thousand six hundred dollars was the consideration named, and that he he had paid that sum for the purchase to Mr. Rogers. No evidence was given to show that this money had not been accounted for; no statement of accounts respecting the land transaction was given in evidence, but it was allowed to rest as the simple receipt of the money by Mr. Rogers thirty-five years before the trial. This was entirely insufficient to establish any right of recovery upon the principles heretofore laid down. This evidence was also an illustration of the dangerous character of the action, as Mr. Cramer testified, that, except for the presence of the deed, his evidence would have been, that he paid to Mr. Rogers the sum of three thousand dollars, but as the deed expressed two thousand six hundred dollars as the consideration, he believed that to be the sum paid.

Further, to establish his case, the plaintiff called as a witness Edwin Smith, the son-in-law of Mr. McIntyre, who testified to an interview at the Troy House, in October, 1846, between

Rogers, McIntyre, General Clark and himself, in which an attempt was made to settle the difficulties between the parties. The witness states that the parties were engaged in the interview nearly all day, and in looking over their accounts; that they agreed upon certain items, which Clark set down on a paper, which was not signed by the parties, and that there were some items in favor of each party. The paper was copied by the witness the same day, and his copy was produced in court. In answer to the question what was said by Rogers, in relation to the item, "1830, December 11th, G. & E. Curtis's note for Peck judgment, $1,372.24? Ans. I cannot tell the particular conversation as to each item. Ques. Tell the substance of what was said about that item, if anything was said? Ans. The substance was that the note belonged to John McIntyre, and should be credited to him. This was said by Rogers. The witness testified substantially in the same manner as to each of the items on the debtor side of the paper. He sometimes testified, "Rogers said that was right," sometimes " he said that was correct," sometimes adding "as near as I can recollect." On his cross-examination he testified that he is not able to state who were present during the interview except the four persons before named. He cannot tell whether Mr. Warren, the present defendant, was present, nor whether James Rogers was present, nor whether John Rogers was present. He cannot say whether the parties had all their books of account there, nor whether they went through an examination of all the accounts, nor can he give the language employed by either of the parties in discussing either or any item of that account. He states that he made no written memorandum of the conversation, or any part of it which took place at the interview, then or at any time since, and that his recollection was not, at the trial, such as that he was able to detail any conversation had by Rogers at that interview. He further testifies, that before the interview broke up they got into a dispute about the accounts, and he says, "in substance, Rogers refused to have anything more to do with the negotiation." On his re-examination he testifies that the dispute he speaks of did not refer to the items mentioned in the paper produced; that he means "that they did not go through with their whole accounts and come to any conclu-

sion as to a final balance, but they broke up in a dispute in reference to their accounts."

This evidence was competent, certainly, but, to my mind, quite unsatisfactory. The conversation took place in 1846, and the testimony was given in 1863, after a lapse of seventeen years. No memorandum of it had ever been made by the witness. It did not appear that his recollection had ever been refreshed or strengthened by any circumstance or event calculated to produce that result, or that he had ever discussed the subject with General Clark, that he had ever repeated the conversation to any one before testifying, or that it had ever been brought to his own mind, during that period of seventeen years. His want of recollection of the various subjects to which I have referred, the absence of any memorandum of the statements of the parties, his confessed inability to repeat any language that was used by Rogers in the conversation, the fact that Rogers broke up the interview and refused to have any thing more to do with the negotiation, are circumstances that detract greatly from the effect of the evidence. The evidence is not so clear and distinct as will justify the breaking up of settlements made under the the signatures of the parties, more than thirty years before the trial, and never called in question by the evidence adduced. There is no evidence that Mr. McIntyre was not fully capable of understanding the accounts and ·protecting his own interests, or that he was inferior to Mr. Rogers in sagacity or intelligence.

The items of the memorandum are not, of themselves, entirely satisfactory. I have already shown that, if there was an error in the charge of the Curtis note of one thousand three hundred and seventy-two dollars and twenty-four cents, it was balanced by a credit of the same amount. Mr. Rogers could not have intended to promise the payment, or admit his liability for the payment of a note which he did not owe. There must be either an error on the part of the witness, or the account had been only conditionally stated, subject to further examination, and the point of inquiry, which would show the true state of the case, had not been reached when the negotiation was broken off, and the interview ended. The memorandum produced by the witness contains not only items

to be charged against Rogers, but five items to be credited to him in his account with the plaintiff, all of which, the witness testifies, were assented to on both sides. The last of these items was in these words : " 18th July, 1846. Judgment, paid Bank of Troy, being balance due on dock-sticks, $839.31." If this item had been credited to Mr. Rogers, and deducted from any claim McIntyre might have established against him, it would have been a clear error. On the trial, it was proved that, although Rogers had paid this sum to the Bank of Troy for McIntyre, in July, 1846, yet that, on October 6, in the same year, McIntyre had refunded the same to him, and taken his receipt for the amount. It does not, therefore, appear to be at all probable that the parties had arrived at any absolute conclusion respecting the items embraced in the memorandum. It would seem more likely that the items had been written down as proper subjects of inquiry, but that no absolute conclusion had been reached when the interview was ended in anger. Upon a review of the whole matter upon the evidence, as well as the law, I think the judgment of the referee and that of the court below should be affirmed. Having reached this conclusion upon the merits of the case, it is unnecessary to discuss the questions arising upon the statute of limitations.

Judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.