Minnesota Central Railway Company .v. Morgan.

[ONONDAGA GENERAL TERM, June 27, 1865.   *Mullin, Foster, Morgan* and *Bacon,* Justices.]

---

## THE MINNESOTA CENTRAL RAILWAY COMPANY *vs.* MORGAN and others.

An agent cannot make a profit to himself out of the business of the agency, over and above such reasonable compensation as by law, or the agreement of the parties, he may be entitled to.   All profits made by the agent belong to the principal.

Where agents, employed to effect insurance upon property, having insured the same in their own names, as well to secure their advances to the owner, as for the benefit and advantage of the latter, in a mutual insurance company, received from the company scrip of the value of $2800, being the sum to which the insured was entitled as their share of the profits of the company for the year in which the property was insured; *Held* that, although the agents had taken the policy in their own names, had paid the premium, and charged no other commission for effecting the insurance, they were not entitled to the scrip; that it was the property insured that earned the money, and the owner was entitled to its earnings.

Where an appropriation by the agents, of such dividends, is attempted to be justified on the ground of a *custom* prevailing among agents employed in the business of insuring, by which such agents are entitled to all dividends declared by mutual companies, in lieu of all other compensation, for effecting insurance, the custom should be proved by the clearest evidence, should be uniform, and notice of its existence brought home to the principal.

No custom can be established which contravenes a well settled principle of law.

And it being the settled doctrine of the courts, both of law and equity, that an agent cannot appropriate to his own use any portion of the profits arising from the business of the agency, a custom which overrides that rule of law,

and authorizes the agent not to appropriate to himself a part only, but the whole of the profits arising from the business of his principal, cannot prevail. The rights of all parties are best secured by requiring the broker to charge such commissions as he may be fairly entitled to, and permitting the customer to take whatever profits may be earned in the course of the business. *Per* MULLIN, J.

THE plaintiff is a railroad corporation, incorporated by the state of Minnesota. The defendants were brokers, residing and doing business in the city of New York.

In October, 1863, the plaintiff, desiring to purchase a quantity of railroad iron in England, applied to the defendants to sell a letter of credit on George Peabody & Co. of London, the avails of which were to be applied in payment for said iron. The defendants were entitled to a commission of half of one per cent for the advance thus made, and, as security for the repayment of the amount so advanced, they were, by the agreement between the parties, entitled to a lien on the iron purchased. The notes of the plaintiff, indorsed by its president, for $15,000, were to be deposited with the defendants, and an insurance was to be, and finally was, effected on the iron, in the name of the defendants, the loss payable to themselves.

The insurance was effected on the suggestion of the defendants, but with the consent of the plaintiff, and the business was done in this way. The defendants procured to be issued to themselves a policy, on account of whom it might concern, to apply to railroad iron shipped under their credit on Geo. Peabody & Co., by the Atlantic Mutual Insurance Company, for the sum of $250,000. The defendants gave to the company a note for $10,241, payable in six months, for the premium for such insurance. The premium on iron actually shipped was $649.41 less than the amount of the premium notes, and that sum was, therefore, refunded to the defendants. There was shipped iron other than that owned by the plaintiff, which was covered by the policy, and the premium for which was

Minnesota Central Railway Company *v.* Morgan.

paid from said note. The defendants paid the note at maturity.

The plaintiff paid up the advance obtained by the letter of credit, and all other charges of the defendants, for or on account of such advance and the insurance of said iron. After the business was thus transacted, the defendants rendered to the plaintiff an account, in which, among other things, they charged the plaintiff with $7,025.22 for the insurance of said iron, and credited it with $15,000, deposited as security, as above mentioned, and admitted a balance due to the plaintiff of $7,137.45 on the 24th October, 1864.

The Atlantic Mutual Insurance Company issued to the defendants scrip amounting to $2800, as and for the share of the profits of the company for the year in which said iron was insured, to which they were entitled by reason of the insuring of said iron in said company. This sum the defendants appropriated to their own use, as and being their own property; and they denied the right of the plaintiff to share in said profits. The defendants claimed it as belonging to them, because the policy was in their names, and they had paid the premium for the insurance, and charged no other commissions for effecting the insurance.

The plaintiff demanded the scrip delivered to the defendants. They refused to deliver, and this action was brought to compel a surrender of it to the plaintiff.

The complaint was dismissed, with costs, and the plaintiff appealed from that judgment.

*By the Court,* MULLIN, J. The insurance of the iron was effected, as well to secure the defendants for their advance to the plaintiff by means of the letter of credit as for the benefit and advantage of the plaintiff. In effecting the insurance, the defendants acted at the request of and as agents for the plaintiff, and as a necessary consequence the

latter became liable to the defendants for the premiums paid to the insurance company. It was wholly immaterial who advanced or became directly responsible for the premium. The plaintiff was the party benefitted, and liable to pay or refund such premium.

Factors and brokers are in the daily practice of giving notes or drafts for the accommodation of their customers, and it was never supposed that the customer was not bound to protect the factor or broker against loss arising from the liability thus incurred. It is wholly immaterial in such case whether the liability results to the benefit or loss of the customer; he must repay whatever the agent is compelled to pay for his benefit.

We do not know whether the premium paid to the Atlantic company was more or less than was charged by other companies for the same risks. If the defendants had insured in a stock company at the lowest rate charged for insurance, and the company had for any reason paid back a part of the premium charged, it would of course have belonged to the insured.

No rule of law is better settled than that the agent cannot make a profit to himself out of the business of the agency, over and above such reasonable compensation as by law or the agreement of the parties he may be entitled to. All profits made by the agent belong to the principal.

It is conceded that the defendants have received scrip from the Atlantic company of the value of $2800, which is the share to which the party insuring the railroad iron is entitled as his share of the profits of the company. It was the property insured that earned the money, and the owner was entitled to its earnings.

The agents claim to retain these profits because they gave the premium note, and because the policy was issued in their name. But they acted for the plaintiff, and it is entitled to all the benefits of the insurance. If the insurance company had failed, and the iron had been lost, the

Minnesota Central Railway Company *v.* Morgan.

plaintiff must'have sustained the loss and paid to the defendants the amount paid as premium. The fact that the insurance was in a mutual company can make no difference in the rights of the parties; it only furnished a chance for a dividend of the profits, thereby reducing the premium, which was practically impossible had the insurance been in a stock company.

The ground principally relied on by the defendants in justification of the appropriation to themselves of the dividends is that by a custom prevailing among agents employed in the business of insuring for others, the former is entitled to all dividends declared by mutual companies, in lieu of all other compensation for effecting such insurance. The first answer to this claim is that the custom is not satisfactorily proved. Such a custom should be proved by the clearest evidence; it should be uniform, and brought home to the knowledge of the principal.

The witnesses not only do not agree as to the existence of the custom, but several persons having the means of knowing, if such a custom existed, swear there is no such custom known to them; it is not shown to be uniform; and no notice of its existence is brought home to the plaintiff.

But I do not rest my objection to the custom on either of these grounds. No custom can be established which contravenes a well settled principle of law. It has been the settled doctrine of the courts, both of law and equity, for centuries, that an agent cannot appropriate to his own use any portion of the profits arising from the business of the agency. The custom proposed to be established overrides this rule of law, and authorizes the agent not to appropriate to himself a part only but the whole of the profits arising from the business of his principal. Such a custom needs only to be stated to be repudiated. If tolerated it would lead to the grossest abuses. Insurance brokers would be induced to become members of mutual

insurance companies; all property entrusted to them would be insured in these companies, not unfrequently without regard to expense, or even the responsiblity of the company, so that it should exist long enough to enable them to dispose of the dividends which might be awarded to them.

The rights of all parties are best secured by requiring the broker to charge such commissions as he may be fairly entitled to, and permitting the customer to take whatever profits may be earned in the course of the business.

The learned judge by whom this cause was tried erred in finding the existence of the custom insisted on by the defendants.

The judgment must therefore be reversed, and a new trial ordered; costs to abide the event.

[NEW YORK GENERAL TERM, November 2, 1868. *Ingraham, Daniels* and *Mullin,* Justices.]