BOARDMAN v. GAILLARD *et al.*, appellants.

*Joint-owners of insured property — right to insurance dividend — Custom — Receipt in full.*

Plaintiff owned four-fifths of a steamer and defendants owned one-fifth. Defendants procured an insurance on the vessel in their own name, plaintiff paying four-fifths of the premium. Defendants received certain insurance dividends. *Held*, that plaintiff was entitled to four-fifths thereof.

Proof of knowledge of a custom, or of facts from which it may be fairly inferred, is ordinarily essential to charge a person with the consequences of the custom.

A receipt in full of all demands was set up as a defense to a claim existing at the time the receipt was given. The signer of the receipt testified that he did not read the receipt, and intended only to give a receipt for the amount actually received. From all the evidence on the point the referee found that the amount was not received in full of all demands. *Held*, that the court on appeal would not disturb the finding.

APPEAL from a judgment in favor of plaintiff entered upon the report of a referee. The action was brought to recover the proceeds

of scrip dividends on insurance premiums. The opinion states the case. The receipt referred to was in the following form:

"Received, New York, 12th November, 1867, from Messrs. Aymar & Co., seventy-six dollars and thirty-five cents, to close account, my interest in steamer 'Mary A. Boardman,' and in full of all demands of mine against Messrs. Aymar & Co.

(Signed)                    "WILLIAM BOARDMAN."

*G. H. Foster,* for appellants.

*E. H. Benn,* for respondent.

DANIELS, J. The plaintiff and the defendants, who constituted the firm of Aymar & Co., were the owners of the steamer called Mary A. Boardman from the time when she was built, in 1862, until August, 1864, when she was sold. The title was in the defendant, Joseph Gaillard, Jr., as security for advances made by his firm in building her. It was so held for the benefit of the plaintiff and defendants, he owning four-fifths and they the remaining one-fifth; she was managed by the firm of Aymar & Co., in which the plaintiff was not interested. While she was so owned and managed, she was insured by the firm in the Atlantic and Sun Mutual Insurance Companies. These companies transacted their business on what is known as the mutual plan, which was so arranged and carried on as to allow the persons insured by them to participate in the profits of the business of the companies. Under that arrangement, the firm received from these companies, for the years 1862, 1863 and 1864, certificates called scrip, entitling them to certain amounts, as their portion of the earnings or the profits of the business done in those years. The insurances, on account of which these certificates were issued and received, were all effected for the benefit of the plaintiff as well as the defendants, and four-fifths of the premiums paid for them, were charged over by the defendants to him, and allowed by him in the settlement of their accounts; in effect, therefore, four-fifths of their amount resulted from the insurance of his interest in the steamer, and the premiums paid by the firm and re-imbursed to it by him. And that proportion of the certificates or scrip was, for that reason, as much his property as it would have been if the insurance to that extent had been effected in his

name. If a loss had happened during the continuance of either insurance, no person would deny the plaintiff's right to four-fifths of the entire amount paid in satisfaction of the claim under it, and yet that would be no more directly the result of the premium paid by him for the insurance, than the certificates or scrip issued on account of its proportionate part of the profits or surplus earnings of the company. In reality, the amount returned, by force of the scrip or certificates, is so much more premium paid than the sum for which, under the circumstances afterward occurring, it appears the insurance should have been made. In substance, it is a rebate of the premium paid for the insurance, and it as completely and equitably belongs to the person whose interest, at his expense, is insured, as the money did, which he paid for the purpose of having the insurance made. If he had paid a certain sum to an agent for the purpose of procuring a policy for him upon his interest in the ship, and it had been effected for less than the amount, the difference would, beyond controversy, be the property of the principal, and his rights, in this respect, cannot be changed by the circumstance that the money actually went into the hands of the insurance company, under an implied understanding that the portion, not required to pay the premium earned, should be returned to the person effecting the insurance. So far as the firm of Aymar & Co. acted for the plaintiff in insuring his interest in the steamer, they did so as his agents; and under the well-settled principles applicable to that relation, he was entitled to the benefits, advantages and profits of the act they performed in his behalf. *Minnesota Cent. R. R. Co.* v. *Morgan*, 52 Barb. 217.

There is nothing in the action of the chamber of commerce, as it is shown in the case, in conflict with the existence of this right. The conclusion of the committee, to which the subject was referred, and which was afterward adopted, was, that "the parties here who effect the insurance are entitled to the stock certificates." In the present case, the plaintiff was the real person who effected the insurance made on his four-fifths of the steamer; it was done for his sole and exclusive protection and benefit, through the action of his agents, and at his expense, and they paid so much more for it than the companies proved entitled to receive, as they agreed to refund by means of the certificates or scrip, issued on account of subsequent surplus profits or earnings.

But as the action of the chamber of commerce cannot be allowed

the effect of law, regarding the rights of parties in legal contro-versies, it would not change the case, even if the construction already mentioned could not appropriately be given to the conclusion men-tioned in the report of the committee. The legal rights of parties to property cannot be divested or changed by any such action. These rights, in this case, result by operation of law from the relations existing between the parties, and the means through which the in-surance upon the plaintiff's interest in the property was effected, and no custom can be allowed, as valid, which would deprive the party, entitled to it, of the protection secured by well-settled legal principles. If it could, the law would be chargeable with the pal-pable absurdity of providing the means for its own subversion. Beyond that, there was no evidence in the case, which, in any view, could render such a custom, even if it existed, obligatory upon the plaintiff, for he was not shown to have any knowledge of its exist-ence ; and proof of such knowledge, or of facts from which it may be fairly inferred, is ordinarily essential to the establishment of a valid custom. *Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136, 160; *Duguid* v. *Edwards*, 50 Barb. 288; *Wadley* v. *Davis*, 63 id. 500; *Read* v. *Delaware & Hudson Canal Co.*, 3 Lans. 213; *Higgins* v. *Moore*, 34 N. Y. 417.

The proof showed that Aymar & Co., from time to time, rendered accounts to the plaintiff, showing their receipts and disbursements in the management of the steamer, and the premiums paid on the plaintiff's account for insuring his interest; but, as they contained nothing whatever in reference to the certificates or scrip received, they present no obstacle in the way of maintaining the present action for his proportion of their proceeds, even though he failed to object to the accounts and afterward settled them. There was nothing on the face of the accounts rendered, from which he could infer that the firm intended to claim his proportion of such pro-ceeds, and he could not therefore be reasonably expected to object to their omission to credit him with it; besides that, his own evi-dence as a witness, which was acted on as credible by the referee, was, that he did not know that any thing had been realized from the certificates or scrip when the accounts rendered were settled, and if he had, that would not have precluded him from proving a mistake or misapprehension as to the facts, on his part, as to that subject. *Hutchinson* v. *Market Bank of Troy*, 48 Barb. 302, 324 ; *McIntyre* v. *Warren*, 3 Keyes, 185. The proof in this case was

sufficient to bring the plaintiff's claim within the rule supported by these authorities.

And after these accounts had been rendered and settled, and after the proceeds of the certificates or scrip had been received by the firm of Aymar & Co., the plaintiff received $76.35, as the balance then due him, out of the earnings and management of the steamer; the receipt then given by him, declared the amount paid to close the account of his interest in the steamer Mary A. Boardman, and to be in full of all demands against Aymar & Co.

At the time when that payment was made, the plaintiff testified that no settlement was made, and that all which was designed to be receipted for, was the amount of money he received; that he did not read the receipt, and could not do so without his glasses ; when, on the other hand, the clerk of the firm, who made the payment and took the receipt, testified that it was paid as the last amount the plaintiff was entitled to on account of his interest in the steamer. Under this state of the evidence, the question, whether the amount paid was received in full by the plaintiff, was one of fact, and as the referee has found upon it against the defendants, his conclusion must be adopted as final, for no such preponderance existed upon the subject, either way, as would justify this court in holding that conclusion to be erroneous.

It must be assumed, in conformity with this finding, that the amount paid was simply received as so much then appearing to be due to the plaintiff from the defendants, having no effect whatever upon any other legal demand which might be shown to exist against them in his favor; accordingly, there was nothing in what then transpired, which should prevent the plaintiff from maintaining his present demand; and the statement in the receipt, subscribed by him, that he received the amount paid, in full, did not exclude proof, showing that such was not the fact. What the receipt contained on this subject was, in no just sense, a contract ; it was a simple declaration, at the most, that the amount paid was received in full of all demands, and that has always been liable to explanation and contradiction, where it may be shown to be inconsistent with the truth and the settled rights of either party to the controversy involving it. *Ryan* v. *Ward*, 48 N. Y. 204. The referee found that certificates or scrip were received by Aymar & Co., on account of the insurance of the steamer in the Sun Mutual Ins. Co., to the amount of $2,520; but the evidence of the secretary,

who was sworn and examined as a witness on the plaintiff's behalf, showed that it was all canceled without any thing being paid upon it by the company.    The only profit which the firm derived from it was secured by means of its sale, made in April, 1866, at a discount ranging from twenty to thirty-seven per cent.  This large discount was not made good by the interest of six per cent, and the dividend of one and one-half per cent which the company paid upon it; neither did those payments, and the excess in the gross amount of the certificates or scrip received over the amount allowed by the referee, so far increase the proceeds, as to equal the amount allowed for them by the learned referee.   What that precise amount should be, under the evidence, it is not necessary to determine; for the defendants, by their answer, have admitted that they received scrip from both the insurance companies insuring the steamer, on which they realized the sum of $8,788.69, and that, certainly, is as much as the evidence warranted the referee in concluding that they had received; four-fifths of that, amounting to the sum of $7,030.92, the plaintiff was certainly entitled to recover, which is $42.66 less than the amount allowed him.   As the defendants, upon their own admission, are liable under the evidence relating to the other subjects, considered to this extent, there can be no necessity for examining the objections taken during the trial, as to the exclusion or admission of evidence; neither can it be proper to consider the vast multitude of exceptions taken by the defendants to the referee's refusal to find on the specific matters submitted to him, for no question can be presented by exceptions of that description.  *Rogers* v. *Wheeler*, 52 N. Y. 262.  The only error in the case, at all prejudicial to the defendants, is that relating to the amount allowed, and to correct that, the judgment should be reversed, and a new trial ordered, with costs to abide the event, unless the plaintiff, within twenty days after notice of the decision, stipulate to deduct $42.66, with interest from the 16th of April, 1866, from the amount of the judgment.  In the event of making such stipulation, the judgment, as so reduced, should be affirmed, without costs of this appeal to either party.

DAVIS, P. J., and LAWRENCE, J., concurred.

*Ordered accordingly.*